PER CURIAM:
Claimant brought this action to recover costs associated with water damage to her basement and personal property which she alleges was caused by the negligent maintenance of the drainage system for Route 60/16, also referred to as George’s Drive, and Kanawha Terrace in St. Albans, Kanawha County. The hearing of this matter was held on November 14, 2002. Prior to the beginning of the hearing of the claim, the Court visited the scene of the incident. The Court is of the opinion to make an award in this claim for the reasons set forth more fully below.
Claimant’s residence is located at 3303 Campbell Lane in St. Albans, Kanawha County. Her home is situate on one and one-fourth acres of land which abuts Campbell Lane at its intersection with George’s Drive. Campbell Lane is a private road whereas George’s Drive is a paved State road to the west of claimant’s home. Claimant’s driveway extends from her home and intersects with Campbell Lane. George’s Drive and Campbell Lane both intersect with Kanawha Terrace just a few yards northwest of claimant’s driveway. The portion of Kanawha Terrace at issue extends a short distance to the north of claimant’s property where it intersects with U.S. Route 60. There is a railroad underpass at the intersection of Kanawha Terrace and U.S. Route 60. The ditch line along George’s Drive proceeds from west to east and the ditch line for Campbell’s Lane runs from east to west. The water in the ditch lines flows in an easterly direction. There is a confluence of the two ditch lines just north of the boundary of claimant’s property. Claimant’s basement has a drainage system that directs water into the State’s drainage system described herein. The basement has a cement floor which lies above three drains that flow into a common drain under her home. From this location, the water flows north in the drain buried under her porch and through approximately three-fourths the length of her front yard at which point the drain then angles to the west directing water from the drain into the ditch line adjacent to George’s Drive. At this point, the water flows through the culvert under George’s Drive which empties the water into the Kanawha Terrace ditch line where it then flows through the culvert under Route 60 and eventually empties into the Kanawha River. According to claimant, the drainage system in her basement is the same as it was when the house was built.
*313 In the summer of 1999, respondent employed a contractor to pave George’s Drive which had been a gravel road. The ditch lines adjacent to the road were cleaned and new drainage pipes were installed in an effort to improve drainage in the area. George’s Drive also was widened when this work was performed. As a result of this project, claimant contends that respondent increased the volume of water in the ditch line along George’s Drive; that the terminus of her drainage pipe was covered during the project; and that these actions on the part of the respondent prevented the water from draining properly from her property, thus resulting in flooding in her basement. Claimant also contends that there was a build up of silt in her drainage pipe caused by the back flow of water from George’s Drive. Claimant acknowledges that prior to the performance of the paving project, utility companies moved their lines located in front of claimant’s home as well as the other residents’ homes to the east of her home. She testified that she had not experienced any drainage or flood problems during the sixty-eight years she has resided in this home until December 14, 1999, at which time the first of three floods occurred in her basement. A second flood occurred on February 14, 2000, and the third flood occurred on February 18, 2000. As a result of the three floods which occurred in claimant’s basement, she sustained total damages in the amount of $14,571.37.
Claimant was out of town on December 14,1999, when her basement first flooded. She returned home the next day to find the damage. Although most of the water had receded, it damaged her furnace, water tank, washer and dryer, and some cabinets. The water level in her basement reached approximately one foot and remained there for one day. The water eventually flowed out through the common drain in the basement which empties into the George’s Drive drain. This flood resulted in damages sustained by claimant in the amount of $3,133.60. Claimant notified respondent about the flood, which occurred at the same time the underpass at the juncture of Kanawha Terrace andU.S. Route 60 was flooded. Claimant stated that the underpass had been flooding for many years, but that it had never caused any flooding on her property.
In response to the first flood, Chet Burgess, Kanawha County Superintendent for respondent, went to claimant’s residence on December 15,1999, listened to her complaints, observed her basement, and reviewed the surrounding drainage systems. According to Mr. Burgess, he searched for a possible break in claimant’s drain line but was unable to find one. He also testified that her yard was very wet on this date. At that time, respondent dug into an area around the lower side of Campbell Lane toward the underpass but could not locate any drainage pipes. As a result of the underpass flooding, complaints of water flowing into local residents’ yards, as well as claimant’s flooding problem, respondent decided to undertake a substantial project to alter a portion of the drainage system in this area. Respondent contracted with a contractor to replace the old drainage pipes that extended from the underpass to Route 60 where new pipes were placed for water to flow into the existing pipes that exit into the Kanawha River. According to Mr. Burgess, the old pipe was full of railroad ballast which had built up over the years. Claimant was confident that the work done by the respondent would alleviate,her flooding problems and she was grateful and complimentary to Mr. Burgess on his quick response to her problem.
However, on February 14, 2000, at approximately 2:00 a.m., claimant awoke to find her basement flooded again. This time the water was approximately *314 twelve to fourteen inches deep. As a result of this flooding, she suffered additional damage to her basement and personal property. She had to have more work done on her furnace in an attempt to salvage it as well as having the duct system sanitized and cleaned. This second flood resulted in damages sustained by claimant in the amount of $624.54 Claimant testified that she contacted respondent, but no one was able to help her during the flooding or immediately afterwards due to other emergencies in the area. The day after the second flood, claimant hired A1 Marino Inc., to come to her home to determine the cause of the flooding. An employee of A1 Marino Inc., performed a dye test starting at the northern most drain in her basement, which is a terra-cotta drain, to determine where the problem was located. According to the testimony of A1 Marino, Jr., his employee observed the dye exiting from the ground in the ditch line located at the confluence of George’s Drive and Campbell Lane. Claimant’s photographs admitted into evidence depict this green dye seeping from the ditch line at this same location. Claimant asserts that these photographs support the testimony that there was no drain pipe terminus for claimant’s drainage system at this location. Further, the employee for A1 Marino Inc., used an eel to determine whether there was any problem area within claimant’s drainage pipes. The employee determined that there was silt build up in claimant’s terra cotta pipe located approximately in the middle of her yard. Claimant testified that the employee who operated the eel told her that the silt was coming from water in George’s Drive that was backing up into her pipe with significant force and pushing silt into the pipe. Further, he informed claimant that this was preventing the water in her basement from draining out. Claimant testified that respondent again came to her home on February 17, 2000, at which time its employees unearthed her drainage pipe in and around the location that the dye had exited her drainage system. There is a dispute between the parties as to whether or not respondent left claimant’s drainage line uncovered overnight on February 17, 2000, and whether or not respondent found a crushed portion of plastic pipe inserted between two portions of claimant’s terra cotta drainpipe onFebruary 17,2000. Regardless, it is uncontested by the parties that claimant suffered a serious flood on February 18, 2000.
Claimant testified that on February 18, 2000, at approximately 7:15 a.m., a steady rain began. The rain continued into the afternoon and was much heavier by 4:00 p.m. It was described by claimant as a “torrential rain.” Claimant and her daughter, Phyllis Holsclaw, who lives next door, monitored the rainfall and the basement all day. At approximately 4:00 p.m., the water began slowly to back up into her basement. She called respondent numerous times but was unable to get assistance from respondent that evening. Once the water reached approximately two and one-half feet deep, she called the Jefferson Fire Department. The fire department arrived and pumped out approximately thirty thousand gallons of water from her basement. Claimant testified that she sustained more damage during this flood than she had as a result of the other two floods combined. As a result of this third flood, claimant sustained damages in the amount of $ 10,813.23.
Phyllis Holsclaw, claimant’s daughter, grew up in claimant’s house, moved away for some years and then moved into the house next door to claimant where she has lived for the last twenty-five years. She testified that she is aware of and familiar with the drainage system within claimant’s home as well as respondent’s drainage system nearby. She stated that it is her opinion that claimant’s drainage problems are not related to surface water run off or her down spouts. She stated that the down *315 spouts flow away from the house approximately three or four feet and divert the water away from the house. According to Mrs. Holsclaw, claimant’s flooding problems stem from a combination of heavy rains and claimant’s terra cotta pipe being partially blocked which forced muddy water to back up' into claimant’s basement. Photographs which she took for the claimant were admitted into evidence at the hearing. These photographs depict the flow of the green dye used by A1 Marino Inc., to find the terminus of her basement drain line. The dye seeped out of the ground in the ditch line located at the entrance of George’s Drive. These photographs establish that claimant had no drain line protruding into the ditch line at this location. Mrs. Holsclaw stated that there is supposed to be a drainage pipe at this location and that the photographs establish that respondent apparently covered up the terminus of claimant’s drain during the paving project on George’s Drive. However, she also stated that she did not see if there was a pipe protruding at this location and whether water was flowing out of it prior to the road work and the flooding in 1999. Neither party can state with certainty if there was a working pipe at this location prior to 1999, but Mrs. Holsclaw testified that claimant’s drainage system worked well until the respondent made changes to George’s Drive in 1999. She also is of the opinion that when respondent deepened the ditch line along George’s Drive, it provided drainage for substantially more water from a greater distance and directed it to the ditch line at the entrance of George’s Drive located near claimant’s property at the terminus of her drain. At this location, the water was directed to flow toward the underpass drain, but Mrs. Holsclaw states that the underpass drain was not properly maintained and as a resultmore waterwas backing up. She stated that this particular drainage system was faulty in that it would not carry such a substantial amount of water as was required in heavy rains. Further, Mrs. Holsclaw testified that the work done by respondent at the underpass following the flooding on December 14, 1999, did not help claimant’s flooding problem because claimant had another flood on February 14, 2000.
According to Mrs. Holsclaw, respondent responded to claimant’s telephone call regarding the second flood on February 16, 2000. She testified that respondent dug up the ground in an attempt to uncover claimant’s drain line terminus. She introduced photographs which she testified were taken on February 16, 2000, that depict respondent’s employees digging in and around the end of the drain at George’s Drive and Campbell’s Lane at the location of the terminus of claimant’s drain. Mrs. Holsclaw stated that she observed the terminus of the drain and estimated that it was buried approximately three feet deep. She also introduced a photograph showing claimant’s drain line terminus and that water was flowing from it as of February 16, 2000. She testified that once respondent uncovered the end of the pipe the employees were satisfied for the time being and placed barrels around the edge of the hole to warn motorists. She stated that respondent did not cover the portion of the pipe back up that evening and that it remained uncovered until March 14, 2000. On February 18, 2000, Mrs. Holsclaw was concerned that claimant’s basement would flood because of the heavy rainfall that day. Therefore, she helped claimant watch the basement all day and night for flood water. A photograph in evidence depicts the main drain and that all three drains in her basement exit into this drain. Clear water was flowing out of the drain. This was approximately 8:00 a.m. on the morning of February 18, 2000. Mrs. Holsclaw took additional photographs between 6:00 p.m. and 7:00 p.m. later the same day which depict high water and a *316 lot of debris in the ditch line at the end of George’s Drive where claimant’s drain terminus is located. Claimant’s composite exhibit number 1.24, also a photograph of the George’s Drive ditch line demonstrates that the water in the ditch line was swift and high enough to cover the terminus of claimant’s drain pipe for water exiting the drain from George’s Drive. According to Mrs. Holsclaw, by this time water was backing up and quickly rising in claimant’s basement. Further, Mrs. Holsclaw testified that the large volume of swift water, the debris, and the fact that respondent had exposed the terminus of claimant’s drain created the problem which resulted in water and silt backing up into claimant’s basement. The water then swirled around in a whirlpool type manner preventing the water from flowing through the culvert pipe and exiting through the drainage system as intended. Mrs. Holsclaw testified that the force of the water flowing from the George’s Drive ditch line easterly toward claimant’s drain terminus simply would not allow the water from claimant’s drain to flow into the drainage ditch as intended. Instead, the force of the water from George’s Drive forced muddy water to back up into claimant’s terra cotta drain pipe creating an even greater problem as the water with silt and debris backed up into claimant’s drainage system resulting in the third flood on February 18,2000.
It is respondent’s position that it adequately maintained the drainage system along George’s Drive and the surrounding area; that it did not cover up claimant’s drain pipe terminus; and that its construction on George’s Drive did not interfere with claimant’s drainage system. Further, it is of the opinion that one of the utility companies performing work in front of claimant’s property in her driveway crushed or broke claimant’s drain line and replaced the broken pipe with an inadequate slip line plastic pipe which was the proximate cause of claimant’s flooding in her basement and the resulting damages.
Chet Burgess is of the opinion that respondent took adequate steps to protect claimant’s property when respondent received notice of the first flood on December 15, 1999. Mr. Burgess testified that he does not recall going back to claimant’s residence until March 14, 2000, nor does he recall any of his employees responding to claimant’s residence until March 14, 2000. Respondent introduced into evidence a DOH-12 which established that respondent did in fact perform major work on claimant’s drainage system on March 14, 2000. Mr. Burgess testified that he and two other employees searched three days for DOH -12's for February 16, 2000, and could not find work orders to confirm that respondent had performed any work on or around claimant’s drain line. The DOH - 12's that were found were related to work performed by respondent on February 16, 2000, at other locations. He stated that it was onMarch 14,2000, that respondent uncovered claimant’s drain line while undertaking a project to connect the drain beneath claimant’s driveway after the third flood. He claims that it was then that respondent discovered claimant’s drain line was broken and crushed. Mr. Burgess stated that when respondent unearthed claimant’s terra cotta drain line he observed that a section of the terra cotta pipe had been broken and that someone tried to repair it by taking a piece of green plastic sewer pipe and using it as a slip line. However, he stated that the plastic slip line pipe was broken and it had collapsed. Mr. Burgess is of the opinion that this crushed pipe was the cause of claimant’s flooding because the water coming from the basement could only seep through the crushed pipe slowly if at all. Further, he stated that when respondent removed the slip line pipe water came gushing out and filled the hole respondent had dug around it. Mr. Burgess estimated *317 that between 200 and 300 gallons of water flowed out of claimant’s pipe. Further, Mr. Burgess is also of the opinion that prior to March 14, 2000, claimant’s flooding problems were aggravated or worsened by surface water run off due to the heavy rains. He is of the opinion that the surface water probably drained around claimant’s footer drains and into the terra cotta drain that was crushed and partially blocked. Further, he stated that the crushed drain line was remedied by work performed by respondent and this action cured claimant’s water problems. Respondent performed this project to assist claimant, but it was not a project required by respondent to remedy any drainage problem on its property. According to respondent, claimant was the beneficiary of respondent’s project. This was a project performed by respondent gratuitously for claimant since it did work on claimant’s property off its right of way. Therefore, respondent concludes that it is not responsible for any of the flooding that occurred in claimant’s basement.
The Court has held that respondent has a duty to provide adequate drainage of surface water from its property, and that its drainage systems must be maintained in areasonable state of repair. Haught v. Dept. of Highways, 21 Ct. Cl. 237 (1980). To hold respondent liable for damages caused by an inadequate drainage system, claimant must prove that respondent had actual or constructive notice of the existence of an inadequate drainage system and a reasonable amount of time to take corrective action. Orsburn v. Div. of Highways 18 Ct. Cl. 125 (1991); Ashworth v. Div. Of Highways, 19 Ct. Cl. 189 (1993).
The Court, having considered all of the testimony and evidence in this claim, has determined that the photographs of the work performed by respondent depict the issues related to the cause of the flooding in claimant’s basement. The evidence established that respondent made changes to George’s Drive and the ditch line adjacent to it during the summer of 1999. The dye test performed by A1 Marino Inc., proved that claimant’s drain line terminus was covered with at least two to three feet of dirt. This made it practically impossible for any water to drain out of claimant’s basement. The testimony also established that respondent had lived in her home for sixty-eight years during which time she had not experienced any flooding problems until December 14, 1999, approximately four or five months following respondent’s paving project on George’s Drive. Further, the photographs taken on the night of February 17,2000, established that the end of the George’s Drive ditch line where claimant’s drain terminus is located was backed up with a large volume of swirling water and debris. The photographic evidence and statements of the witnesses considered together establish that respondent, albeit inadvertently, created a serious drainage problem for claimant when changes were made to George’s Drive and its adjacent drainage ditch. In the opinion of the Court, these alterations were the proximate cause of flooding on claimant’s property. The Court is mindful that respondent attempted to resolve claimant’s drainage problems when it performed work on the underpass and along Kanawha Terrace following the claimant’s first flood in December 1999. However, this action was not adequate because claimant’s drain line terminus remained buried under two to three feet of dirt causing her to experience flooding on two more occasions. It was not until respondent completed its work to reroute claimant’s drain line and terminus on March 14, 2000, that her flooding problem was resolved. The Courtisofthe opinion thatrespondentreceived appropriate and timely complaints from the claimant for respondent’s employees to investigate the area further for potential drainage problems. The Court is aware that *318 respondent’s employees visited the claimant’s home on numerous occasions in a good faith effort to provide assistance to her. However, respondent had constructive notice of the drainage problem in the area and a reasonable amount of time to take corrective action. Therefore, the Court has determined that claimant may make a recovery for the damages caused by the flooding in her basement.
In accordance with the findings of fact and conclusions of law stated herein above, the Court is of the opinion to and does make an award to the claimant in the amount of $14,571.37.
Award of $14,571.37.